**NATIONAL FIRE INSURANCE OF HARTFORD and Continental Casualty Company, Plaintiffs**

v.

**C. HODGES & ASSOCIATES, PLLC et al., Defendants.**

**No. SA–10–CA–579–H.**

United States District Court, W.D. Texas.

Oct. 27, 2011.

---

Stephen Andrew Melendi, Summer L. Frederick, John C. Tollefson, Tollefson Bradley Ball & Mitchell, LLP, Dallas, TX, for Plaintiffs.

Gregory M. Sudbury, Matt R. Pickelman, Quilling, Selander, Lownds, Winslett & Moser, P.C., Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

HARRY LEE HUDSPETH, Senior District Judge.

This is an action for a declaratory judgment under 28 U.S.C. § 2201. The Plaintiffs seek a declaration as to their duty to defend and indemnify their policyholders in an underlying lawsuit pending in state district court. The Defendant policyholders have filed a counterclaim for fees and expenses incurred in defending the underlying suit, as well as the remedies afforded by the Texas Prompt Payment Statute. Tex. Ins. Code § 542.060. Pending before the Court are cross motions for summary judgment filed by Plaintiffs (National Fire Insurance of Hartford and Continental Casualty Company) and Defendants (C. Hodges & Associates, C. Hodges Development, and Charles M. Hodges). The Court, having considered the motions, responses and replies, finds that the Plaintiffs are entitled to a declaratory judgment in their favor, and that the Defendants' claims for relief should be dismissed.

### Background

The following facts are established by the summary judgment evidence: The Plaintiffs issued two separate insurance policies in October 2007 for the period of one year, and each was renewed for a second year in October 2008. National Fire issued a commercial general liability

policy;[1] Continental issued a commercial umbrella policy. The National Fire policy provides, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damages," or "personal and advertising injury," to which this insurance does not apply. We may at our discretion investigate any "occurrence," and settle any claim or "suit" that may result.

(Docket No. 22 at 4–5). It also provides the following definitions:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> 17. "Property Damage" means: (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physical injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

(Docket No. 22 at 5). The Continental Policy provides:

We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the retained limit that the insured becomes legally obligated to pay because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. The insurance applies to "bodily injury" and "property damage" only if: (1) the "bodily injury" or "property damage" is caused by an incident anywhere in the world; (2) the "bodily injury" or "property damage" occurs during the policy period. *Id.*

The Continental Policy provides the following definitions:

> 3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease.

> 9. "Incident" (a) with respect to "bodily injury" and "property damage," "incident" means an occurrence. An occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> 12. "Property Damage" means: (a) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the occurrence that caused it.

*Id.* at 6.

In 2003, C. Hodges & Associates and its affiliates (collectively the "Developers") be-

---

1. There is a dispute among the parties over whether C. Hodges Development Inc. and Charles M. Hodges are additional insureds under the 2007–08 National Fire policy. Because the Court finds that Plaintiffs have no duty to defend, it does not reach this issue.

gan to develop a San Antonio shopping center called Legacy Shopping Center ("Legacy"). In the course of lease negotiations with the prospective tenants, including the plaintiffs in the state court lawsuit,[2] the Developers represented that space was already committed to a seafood restaurant, a kayak expedition company, a bridal store, a high-end steakhouse, and a bookstore; additionally, the Developers represented that 70% of the 100,000 square feet of office space had been leased. The Developers told the Tenants that Legacy would become "an urban village where people live, work and play" and that it would be completed by 2008. As a result of these representations, the Tenants signed leases with the Developers. The Tenants moved into the space, but by 2008 realized that the promised businesses would not open in Legacy and that the shopping center would never see the traffic promised by the Developers. The Tenants explain in their petition: "Tenant Plaintiffs were left in a half-empty retail center surrounded by dirt," a reality that fell far short of the representations made by the Developers. They further allege that "as early as March 2007, the Developers knew that [Legacy] would not become what it was represented/marketed/defined to be." They claim the Developers realized that the second phase of development would never occur, but failed to share this with the Tenants who continued to pour money into their businesses in an effort to stay afloat until the development was completed and traffic increased.

The Tenants bring claims against the Developers under the Texas Deceptive Trade Practices Act, and for fraud, fraud by nondisclosure, statutory fraud and negligent misrepresentation. The Defendants argue that the Tenants' allegations trigger the Plaintiffs' duty to defend them in the underlying suit. The Plaintiffs deny any duty to defend, contending that the Tenants do not allege "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the policy, which would trigger their duty to defend or indemnify their policyholders.

## Analysis

In this diversity case, Texas law furnishes the rule of decision. See, e.g., *Cleere Drilling Co. v. Dominion Exploration & Production, Inc.*, 351 F.3d 642, 646 (5th Cir.2003). Accordingly, the issues in this case relating to policy coverage must be determined in accordance with Texas law.

### I. Duty to Defend

In Texas, insurance policies are construed according to ordinary contract principles. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994). The interpretation of an insurance policy is a question of law. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983). Under the "eight corners" rule, an insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* When applying the eight corners rule, a court must give a liberal interpretation to the allegations contained in the state court petition. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24–26 (Tex.1965). If there is any doubt about

---

2. *Dragon Fish, et al. v. Santikos Legacy, Ltd., Santikos Income Property, LLC, John L. Santikos, C. Hodges & Associates, PLLC d/b/a Hodges & Associates, PLLC, C. Hodges Develop-* *ment, Inc., and Charles M. Hodges,* Cause No. 2008–CI–12452, in the 73rd District Court of Bexar County, Texas.

whether the allegations reflect a potential liability, such doubt must be resolved in favor of the insured. *Mary Kay Cosmetics, Inc. v. North River Ins. Co.*, 739 S.W.2d 608, 612 (Tex.App.-Dallas 1987, no writ). As long as the petition alleges facts establishing at least one cause of action covered by the policy, the insurance company has a duty to defend the entire case. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996).

According to the terms of the policies in this case, to trigger the duty to defend there must be allegations in the petition of an "occurrence" which resulted in "bodily injury" or "property damage." The Plaintiffs argue that the underlying petition alleges none of these elements.

## A. Occurrence

■ Both policies define an "occurrence" as an accident, "including continuous or repeated exposure to substantially the same general harmful conditions." Like most commercial general liability policies, however, they do not define "accident." Therefore, the Court must interpret the term in accordance with its "generally accepted or commonly understood meaning." See e.g. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex.2007). The Tenants' petition alleges that the Developers' misrepresentations led to their economic losses. The Court must first determine whether misrepresentations qualify as an "occurrence" under the terms of the policies and Texas law.

Texas courts have consistently held that intentional misrepresentations are not an "occurrence" or "accident" because they are made with the intent to defraud and thus, are not accidental. *Houston Petroleum v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.-Houston 1990, writ denied); *see also Allstate Ins. Co. v. Hicks*, 134 S.W.3d 304, 313 (Tex.App.-Amarillo 2003, no pet.). Negligent representations, on the other hand, have only been considered by one Texas appellate court. see *State Farm Lloyds v. Kessler*, 932 S.W.2d 732 (Tex.App.-Fort Worth 1996, writ denied) The court in *Kessler* construed terms nearly identical to those at issue here, and found that negligent misrepresentations could not be an occurrence. *Id.* In *Kessler*, the plaintiffs sued the defendants for breach of contract, breach of warranty, and DTPA violations after they allegedly made misrepresentations about their home in an effort to induce the plaintiffs to purchase it. *Id.* at 734. Specifically, it was alleged, the defendants assured the plaintiffs that the property did not have drainage or foundation problems. *Id.* Shortly after purchasing the property, the plaintiffs realized that the assurances were inaccurate. *Id.* The Fort Worth Court of Appeals held that the only claims stated by the plaintiffs were negligent misrepresentation claims, and that those were insufficient to trigger a duty to defend. *Id.* at 737.

In the instant case, the Tenants allege that the Developers misrepresented the future outlook of Legacy, that those representations induced them to lease property from the Developers, and that they have suffered economic loss as a result. The Defendants direct the Court to *The Aetna Casualty and Surety Co. v. Metropolitan Baptist Church*, 967 F.Supp. 217 (S.D.Tex. 1996), a federal district court opinion issued six weeks after the *Kessler* case that also dealt with an insurer's duty to defend against allegations of negligent misrepresentations. The *Metropolitan Baptist* court was apparently unaware of the *Kessler* decision when it issued its ruling because it said: "in the absence of state court precedent, this Court must predict how the highest court of the state would rule if presented with the same issue." *Id.*

at 223. In what it perceived to be an absence of state court precedent, the Court surmised that Texas courts would find that negligent misrepresentation could constitute an occurrence. Its guess was wrong. The Fort Worth Court of Appeals had issued a ruling to the contrary six weeks prior. Accordingly, this Court must follow the precedent of the Texas courts and find that negligent misrepresentations do not constitute an "occurrence" as the term is defined in the policies.

## B. Damages

■ The absence of an "occurrence" alone is sufficient to grant summary judgment in favor of the Plaintiffs, but assuming arguendo that a negligent misrepresentation could constitute an occurrence under the policies, the. Plaintiffs would still not have a duty to defend because the Tenants do not allege property damage—a threshold requirement for the policies' coverage.[3]

Both policies provide the same definition of "property damage:" "physical injury to tangible property" or the "loss of use of tangible property that is not physically injured." It is undisputed that the petition does not allege any physical injury to Legacy property, but the parties disagree about whether the petition alleges "loss of use of tangible property." According to the Plaintiffs, the petition alleges only economic damages—not loss of use. This creates some consternation on the part of the Defendants, who argue that after the Texas Supreme Court's holding in *Lamar Homes*, the Plaintiffs are foreclosed from arguing that "economic damages" do not constitute property damage.

■ In *Lamar Homes*, the court held:

The economic-loss rule … is not a useful tool for determining insurance coverage.… Its focus is on determining whether the injury is to the subject of the contract itself. In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence. It is a liability defense or remedies doctrine, not a test for insurance coverage … **the duty to defend must be determined … by comparing the complaint's factual allegations to the policy's actual language.**"

*Id.*, 242 S.W.3d at 12–13(emphasis added). After *Lamar Homes*, it is inappropriate to use the economic-loss doctrine, which is at its core a tort law issue, to interpret insurance policies. see *Gilbert Tex. Const. L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 132 (Tex.2010)(emphasis added)("In *Lamar Homes*, we said a breach of contract can constitute an occurrence that causes property damage, thus bringing some breach of contract claims within the general grant of coverage for purposes of determining a duty to defend."). The case does not hold, as the Defendants seem to suggest, that economic damages in and of themselves can satisfy the "property damage" requirement of an insurance contract; nor did it disturb the requirement that the petition must allege either bodily injury or physical damage. In fact, Texas courts have continued to find that "as a matter of law … 'loss of use' in the property damage insurance context must be something more than purely economic loss to trigger coverage and a duty to defend." *Daneshjou Daran, Inc. v. Truck Insurance Ex-*

---

3. The Defendants do not assert in their motion, reply or responses that coverage was

triggered by bodily injury.

*change*, 2009 WL 2410932 at *2, 2009 Tex. App. LEXIS 6134 at *6 (Tex.App.-Austin August 5, 2009, no pet.).

In this case, the Tenants have had access to the leased premises at all time. Regardless of how often and vigorously the Defendants argue otherwise, the petition does not allege that the Tenants were denied use of their property; it only alleges that they lost revenue. Such losses may be covered under a policy, but only when caused by physical injury or loss of use of tangible property and this threshold requirement is not met in this case.

## II. Duty to Indemnify

The Plaintiffs also seek a declaration that they have no duty to indemnify the Defendants should they be found liable for damages in the underlying suit. In Texas, an insurer's duty to defend is a separate and distinct duty from its duty to indemnify. *Trinity Universal Ins. Co. v. Employers Mutual Casualty Company*, 592 F.3d 687, 691 (5th Cir.2010). The duty to defend is determined under the eight-corners doctrine, while the duty to indemnify is determined by the facts that are established in the underlying suit. *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex.2009). "[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons ... negate any possibility that the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 83–84 (Tex.1997). That situation is presented here. The Court has already determined that neither of the policies at issue here provide coverage for the losses alleged in the underlying suit because they were not caused by an occurrence that resulted in property damage. No set of facts could transform the alleged economic injury into property damage cov-

ered by the policies. Therefore, there is no duty to indemnify on the part of either Plaintiff.

## Conclusion

It is therefore ORDERED that a declaratory judgment be, and it is hereby, ENTERED in favor of the Plaintiffs, National Fire Insurance of Hartford and Continental Casualty Company, and that they have no duty to defend or indemnify C. Hodges & Associates, PLLC, nor any of their affiliated entities in connection with the suit styled *Dragon Fish, et al. v. Santikos Legacy, Ltd., et al.*, currently pending in the 73rd District Court of Bexar County, Texas.

It is further ORDERED, that all counterclaims asserted by Defendants C. Hodges & Associates, PLLC, et al., be, and they are hereby, DISMISSED.